UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-23553-ALTMAN

**ROBERT SCHULLER**,

    *Plaintiff*,

*v.*

**ALAIN DIAZ and JASON HOSKINS**,

    *Defendants.*

_____/

## ORDER

Our Plaintiff, Robert Schuller, has brought a civil-rights action under 42 U.S.C. § 1983, alleging that Dr. Alain Diaz and Jason Hoskins were deliberately indifferent to a chicken bone that's been "stuck in [Schuller's] throat for 18 months[.]" Amended Complaint [ECF No. 12] at 3. After we screened Schuller's initial complaint, we found that "Schuller's deliberate-indifference claim [could] proceed against Dr. Diaz," Order [ECF No. 4] at 9, but that his claim against Hoskins "lack[ed] sufficient facts" to state a "constitutional violation," *id.* at 4.[1] We therefore told Schuller he could either proceed on his claim against Dr. Diaz or file an amended complaint "if [he] want[ed] to advance his other claims[.]" *Id.* at 9 (cleaned up).

Schuller chose to file an amended complaint. After carefully screening it, we find that Schuller's *still* failed to state a claim against Hoskins. So, we'll (again) allow Schuller's claim against Dr. Alain Diaz to **PROCEED** to service, though we **DISMISS** his remaining claim.

## THE LAW

---

[1] We also found that Schuller failed to "state a viable claim" against Centurion Managed Care of Florida LLC. Order [ECF No. 4] at 4. Since Schuller is no longer suing Centurion, *see generally* Amended Complaint, we've since terminated that Defendant as a party to this action.

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added). The definition of a "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." *Id.* §1915A(c). In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint, or any portion of the complaint," when it is: (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b).

The Federal Rules of Civil Procedure require, in relevant part, that a well-pled complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Every pleading . . . must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." FED. R. CIV. P. 11(a). In this Court, a civil-rights complaint submitted by a *pro se* prisoner "must be signed under penalty of perjury." S.D. FLA. L.R. 88.2; *see also* FED. R. CIV. P. 11(a) ("*Unless a rule or statute specifically states otherwise*, a pleading need not be verified or accompanied by an affidavit." (emphasis added)). Additionally, "complaints must substantially follow the form, if any, prescribed by the Court." S.D. FLA. L.R. 88.2(a).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

2

The Court may not assist a *pro se* plaintiff in constructing "a theory of liability from facts never alleged, alluded to, or mentioned" in the complaint. *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011). Instead, "to prevail on a particular theory of liability, a party must present that argument to the district court." *Ibid.*; *see also GJR Inves., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as de facto counsel for a party."), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Courts may dismiss a plaintiff's complaint for failure to comply with the Federal Rules, the Local Rules, or court orders. *See, e.g.*, *Brutus v. Int'l Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240–41 (11th Cir. 2009) ("The court may dismiss a claim if the plaintiff fails to prosecute it or comply with a court order."); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion."). And *pro se* litigants are not exempt from procedural rules. *See Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002) ("Despite construction leniency afforded *pro se* litigants, we nevertheless have required them to conform to procedural rules."); *see also Heard v. Nix*, 170 F. App'x 618, 619 (11th Cir. 2006) ("Although *pro se* complaints must be liberally construed, such complaints still must comply with the procedural rules governing the proper form of pleadings." (cleaned up)).

## ANALYSIS

In the Amended Complaint, Schuller asserts two deliberate-indifference claims. *First*, Schuller avers that Dr. Diaz failed to provide him with "the next step in [his] plan of care" and "did nothing to help . . . alleviate [Schuller's] pain" or use "any . . . medical procedure to detect" the problem in Schuller's throat. Amended Complaint at 7 (cleaned up). *Second*, Schuller alleges that Hoskins, the Warden at Everglades Correctional Institution, "did not come and look to see how swollen [Schuller's] neck [was]" and neglected to investigate Dr. Diaz's actions after Schuller filed a grievance. *Id.* at 8.

3

In the Eleventh Circuit, a plaintiff asserting an Eighth Amendment claim of deliberate indifference must satisfy two elements. *One*, the plaintiff must show that "the deprivation he allegedly suffered was 'objectively, sufficiently serious,'" which requires him to establish an "objectively serious medical need." *Wade v. McDade*, 106 F.4th 1251, 1255–56 (11th Cir. 2024) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 839 (1994)). *Two*, the plaintiff must demonstrate that the defendant acted with "subjective recklessness as used in the criminal law," which means that "the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff[.]" *Id.* at 1262. But a defendant "cannot be found liable . . . if he responded reasonably to the risk." *Ibid.* (cleaned up). A prisoner's complaint must plausibly allege both prongs to "survive screening under [28 U.S.C. § 1915A]." *Ellard v. Middlebrooks*, 2023 WL 4686022, at *2 (N.D. Fla. June 26, 2023) (Frank, Mag. J.), *report and recommendation adopted*, 2023 WL 4684911 (N.D. Fla. July 21, 2023) (Wetherell, J.).

Schuller's renewed claim against Dr. Diaz is virtually identical to the original.[2] So, we find (again) that Schuller has stated a viable deliberate-indifference claim against Dr. Diaz. As we explained in our original order, Schuller's satisfied the first element of the deliberate-indifference test by pleading an "objectively serious medical need"—i.e., his severe neck pain. *Wade*, 106 F.4th at 1255–56; *see also Hinson v. Bias*, 927 F.3d 1103, 1122 (11th Cir. 2019) ("[D]epending on the circumstances, severe pain that is not promptly or adequately treated can present a serious medical need." (citing *McElligott v. Foley*, 182 F.3d 1248, 1255–59 (11th Cir. 1999))). Schuller's neck pain became a serious medical need when it grew from feeling like a "needle," Amended Complaint at 4, to "unbearable," *id.* at 5, to "tremendous," *id.* at 6, and was left untreated for a year. Next, Schuller's plausibly alleged that Dr. Diaz was "actually, subjectively aware that his own conduct caused a substantial risk of serious harm" to Schuller—thus meeting the deliberate-indifference test's second element. *Wade*, 106 F.4th at 1262.

---

[2] Schuller's made two small changes: (1) he now claims that he has had a "chicken bone stuck in [his] throat for 18 months," not "15 months," *compare* Amended Complaint at 6, *with* Complaint [ECF No. 1] at 7; and (2) he now clarifies that Dr. Diaz falsified his diagnosis "intentionally," *ibid.*

Despite learning of Schuller's pain since "set[ting] up . . . an Xray in May 2023," Amended Complaint at 4, *and* seeing swelling "running down [Schuller's] neck for about 3 inches" almost a year later, *id.* at 5 (cleaned up), Dr. Diaz never alleviated Schuller's pain. We said that "this delay in medical treatment—despite Dr. Diaz's subjective awareness that Schuller was suffering from a serious medical condition—*can* constitute deliberate indifference." Order at 8 (emphasis original). As before, then, Schuller's claim against Dr. Diaz meets both elements of the deliberate-indifference test. We'll therefore allow this claim **PROCEED** to service.

We come out the other way on Schuller's claim against Hoskins. As before, Schuller says that he filed a grievance on April 11, 2024, telling Hoskins about the months-long swelling in his neck.[3] Schuller adds that Hoskins's job as the Warden of Everglades Correctional Institution was "to investigate all the facts . . . presented to him." *Ibid.* But, rather than investigate, Hoskins sided with Dr. Diaz. *Ibid.* Schuller alleges that *had* Hoskins "seen how swollen [Schuller's] neck [was]," Hoskins "would have known that something was wrong with [his] neck." *Ibid.* (cleaned up). And, *had* Hoskins approached Dr. Diaz to "find out what his story was[,]" Hoskins "would have determined . . . that there [was] an object in [Schuller's] throat." *Ibid.* (cleaned up). Finally, *had* Hoskins "made sure Dr. Diaz did his job by getting [Schuller] the care that [he] need[s]," Schuller "would not be in all this pain today." *Id.* at 9 (cleaned up). Schuller says that Hoskins's "non-actions," which caused him "extreme pain since November 2023," rrise to the level of "deliberate indifference." *Id.* at 8.

Despite these extra details, Schuller's claim against Hoskins still fails. Schuller concedes that, in fact, Hoskins *did* address his grievance—by adopting Dr. Diaz's position. *See ibid.* ("Hoskins did no

---

[3] Schuller's grievance read as follows: "In the [beginning], I would feel a pinprick when I swallowed. About 6 months ago, sometimes it feels like I got an earache in my left ear because this chicken bone must be pressing on a nerve that goes to my left ear. It has gotten to the point for the past 4 months that right under my left ear on my throat running down for 3 to 4 inches is swollen out about one half inch. I have shown numerous inmates this and told them why. Come look at my neck Warden, and you will see for yourself how swollen this is." Amended Complaint at 7–8.

investigating at all into this issue *except* to take Dr. Diaz's false diagnosis of the X-ray." (emphasis added)). Responding to Schuller's grievance, Dr. Diaz noted the following: "[Schuller] had a neck [X]-ray completed on [May 22, 2023] and there were no abnormal findings. No further action was needed at that time. [Schuller has] an upcoming physical scheduled[.]" *Id.* at 21 (cleaned up). And Hoskins was "entitled to rely on medical judgments made by [a] medical professional[ ] responsible for prisoner care." *Williams v. Limestone Cnty., Ala.*, 198 F. App'x 893, 897 (11th Cir. 2006) (citations omitted).

Schuller insists that Hoskins failed to investigate Dr. Diaz's lies "completely and correctly." Amended Complaint at 8. But Schuller never told Hoskins that Dr. Diaz falsified his diagnosis or refused to treat him. In any event, as we told Schuller the last time, Hoskins's failure to investigate Dr. Diaz's diagnosis "does not show [his] knowledge of specific facts from which an inference of a substantial risk of serious harm [can] be drawn[.]" Order at 5 (cleaned up). And, even if more was required of Hoskins, his "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence." *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000). In the end, Hoskins was told that Schuller showed "no abnormal" signs and had an "upcoming physical scheduled," Amended Complaint at 21, and he was entitled to rely on that information. We therefore **DISMISS** Schuller's claim against Hoskins.

***

And we won't grant Sculler further leave to amend. As we've indicated, we don't see any way for him to assert a valid claim against Hoskins. Generally, "a party must be given at least one opportunity to amend before [dismissing] the complaint." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005). We gave Schuller that opportunity. *See* Order at 9. We needn't grant *further* leave to amend where, as here, any such amendment would be futile. *See L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020) ("Although a district court 'should freely give leave [to amend] when justice so requires,' it may deny leave, *sua sponte* or on motion, if amendment would be futile. Leave to

6

amend would be futile if an amended complaint would still fail at the motion-to-dismiss or summary judgment stage." (quoting FED. R. CIV. P. 15(a)(2) (internal citations omitted))). Notably, this rule also applies to *pro se* litigants like Schuller. *See Jemison v. Mitchell*, 380 F. App'x 904, 907 (11th Cir. 2010) ("When it appears that a *pro se* plaintiff's complaint, if more carefully drafted, might state a claim, the district court should give the *pro se* plaintiff an opportunity to amend his complaint instead of dismissing it with prejudice. Dismissal with prejudice is proper, however, . . . if a more carefully drafted complaint could not state a valid claim." (internal citations omitted)).

## CONCLUSION

Having screened the Amended Complaint [ECF No. 12] under 28 U.S.C. § 1915A, we hereby **ORDER AND ADJUDGE** as follows:

1. Schuller's Motion for Leave to Amend Complaint [ECF No. 11] is **GRANTED.**

2. Schuller's deliberate-indifference claim against Dr. Alain Diaz for failure to treat his medical needs shall **PROCEED** to service.

3. Schuller's deliberate-indifference claim against Jason Hoskins is **DISMISSED** for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b). The Clerk shall **TERMINATE** Jason Hoskins as a Defendant in this action.

4. Since Schuller has paid the Clerk's filing fee of $405.00 and is not proceeding *in forma pauperis*, *see* Clerk's Notice of Receipt [ECF No. 5], the Federal Rules of Civil Procedure require Schuller to serve the Defendant with a copy of the summons and the complaint, *See* FED. R. CIV. P. 4(c)(1) ("The plaintiff is responsible for having the summons and complaint served[.]"). At Schuller's request, we "may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court." FED. R. CIV. P. 4(c)(3).

5. This case shall be administratively **CLOSED**. Any party may move to reopen the case once the Defendant has been served.

**DONE AND ORDERED** in the Southern District of Florida on November 15, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: Robert Schuller, *pro se*